1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KIRK M. RICHBOURG and CAROLE LEE RICKS, a married couple,<br><br>Plaintiffs,<br><br>vs.<br><br>BOBBY L. JIMERSON and JANE DOE JIMERSON, husband and wife; KIM JIMERSON and JANE DOE JIMERSON, husband and wife; ARIZONA TRANSMISSION & ENGINE EXCHANGE, INC., an Arizona corporation dba GLOBAL INDUSTRIAL AUTOMATICS,<br><br>Defendants. | No. CV-12-0136-TUC-BGM<br><br>**ORDER** |

Currently pending before the Court are Defendants' Motion for Summary Judgment (Doc. 78) (based solely on the statute of limitations) and Motion for Summary Judgment Re: Spoliation of Evidence (Doc. 119). Also pending are Plaintiffs' Cross-Motion for Summary Judgment on the Issue of the Statute of Limitations (Doc. 97), Motion for Summary Judgment on the Indispensable Party, Accord and Satisfaction, Warranty Contract, and Economic Loss Defenses (Doc. 98), Response to Defendants' Supplemental Statement of Facts in Support of Reply in Support of Defendants' Motion for Summary Judgment Re: Statute of Limitations and Motion to Strike Affidavit of Patrick Mehall and for Sanctions (Doc. 115), Response to Defendants' Controverting Statyment [sic] of Response to Plaintiffs' Motion for Summary Judgment on the Indispensable Party, Accord and Satisfaction, Warranty Contract and Economic Loss Defenses and Motion to Strike Affidavit of Patrick

1  Mehall and Motion for Sanctions (Doc. 122), Motion to Strike Affidavits of Patrick Mehall
2  and Bobby L. Jimerson (Doc. 125) and Plaintiffs' counsel's Application of John MacMullin
3  to Withdraw as Counsel for Plaintiffs (Doc. 126). On May 9, 2013, the Court heard oral
4  argument on the summary judgment motions.

## I.  MOTIONS TO STRIKE

### A.  *Motions to Strike Contained Within Responses*

Rule 11, Federal Rules of Civil Procedure, delineates the form of motions for sanctions. It provides in relevant part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2). As such, the Plaintiffs' first two motion for sanctions, embedded within their response is improper. *See* Pls.' Resp. to Defs.' Suppl. Statement of Facts in Supp. of Reply in Supp. of Defs.' Mot. for Summ. J. Re: Statute of Limitations (Doc. 115); Pls.' Resp. to Defs.' Controverting Statement of Resp. to Pls.' Mot. for Summ. J. on the Indispensable Party Accord and Satisfaction, Warranty Contract, and Economic Loss Defenses and Mot. to Strike Aff. of Patrick Mehall and Mot. for Sanctions (Doc. 122). Further, Plaintiffs' third motion to strike amends and reiterates the arguments made in their first motion two. *See* Pls.' Mot. to Strike Aff. of Patrick Mehall and Bobby L. Jimerson and Mot. for Sanctions (Doc. 125). Accordingly, the Court will deny Plaintiffs' Response to Defendants' Supplemental Statement of Facts in Support of Reply in Support of Defendants' Motion for Summary Judgment Re: Statute of Limitations and Motion to Strike Affidavit of Patrick Mehall and for Sanctions (Doc. 115) and Response to Defendants' Controverting Statyment [sic] of Response to Plaintiffs' Motion for Summary Judgment on the Indispensable Party, Accord and Satisfaction, Warranty Contract and Economic Loss

- 2 -

Defenses and Motion to Strike Affidavit of Patrick Mehall and Motion for Sanctions (Doc. 122) as moot. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (first amended complaint supersedes original complaint and court will treat the original complaint as non-existent).

### B.     *Third Motion to Strike*

Plaintiffs seek this Court to strike the affidavits of Patrick Mehall and Bobby L. Jimerson. Plaintiffs argue *inter alia* that Mehall's affidavit is not based upon personal knowledge, lacks foundation and contains hearsay. Pls.' Mot. to Strike Affs. of Patrick Mehall and Bobby L. Jimerson and Mot. for Sanctions (Doc. 125) at 2-3; *See* Pls.' Resp. to Defs.' Controverting Statement of Resp. to Pls.' Mot. for Summ. J. on the Indispensable Party Accord and Satisfaction, Warranty Contract, and Economic Loss Defenses and Mot. to Strike Aff. of Patrick Mehall and Mot. for Sanctions (Doc. 122). Additionally, Plaintiffs argue that Bobby Jimerson's affidavit is not based on personal knowledge and is not based on "a disclosed, qualified expert opinion." Mot. to Strike Affs. of Patrick Mehall and Bobby L. Jimerson and Mot. for Sanctions (Doc. 125) at 3.

The Affidavits provide both Mehall's and Bobby Jimerson's position with Arizona transmission & Engine Exchange, dba Global Industrial Automatics ("ATEE"). Mehall Aff. 3/13/2013 (Doc. 114) at ¶ 1; Jimerson Aff. (Doc. 120) at ¶ 2. The Mehall Affidavit states, in relevant part, that the affiant "make[s] this Affidavit of [his] own personal knowledge and experience in [his] capacity as CFO (Chief Financial Officer) of ATEE." Mehall Aff. 3/13/2013 (Doc. 114) at ¶ 3. Similarly, Bobby Jimerson's Affidavit states that "[he] make[s] this Affidavit of [his] own personal knowledge and experience in [his] capacity as the manager of ATEE." Jimerson Aff. (Doc. 120) at ¶ 2. Furthermore, the affiants rely on documentary evidence in support of their contentions, many of which are the same as those relied on by the Plaintiffs. "Rule 56 permits the use of affidavits in evaluating a motion for summary judgment[; however,] [w]hile the facts underlying the affidavit must be of a type that would be admissible as evidence, Fed. R. Civ. P. 56(e), the affidavit itself does not have to be in a form that would be admissible at trial." *Hughes v. United States*, 953 F.2d 531

- 3 -

1  (9the Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553,
2  91 L.Ed.2d 265 (1986)).  Additionally, the statements made by Mehall and Bobby Jimerson
3  regarding their positions at ATEE and the personal knowledge regarding their statements are
4  sufficient to demonstrate such personal knowledge.  *Sea-Land Service, Inc. v. Lozen Intern.,*
5  *LLC.*, 285 F.3d 808, 819 (9th Cir. 2002) (rejecting defendant's argument to exclude affidavit
6  for lack of foundation and personal knowledge, and holding that the district court did not
7  abuse its discretion by admitting declarations of an employee whose affidavit stated her
8  position and responsibilities and personal knowledge of all matters discussed therein).
9       Rule 702, Federal Rules of Evidence, provides:
10      If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
14 Plaintiffs broadly assert that neither Mehall or Bobby Jimerson are experts as required by Rule
15 702 and Supreme Court of the United States case law.  *See e.g., Daubert v. Merrell Dow*
16 *Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995); *Kumho Tire Co.,*
17 *Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).  Plaintiffs, however,
18 have failed to adduce any evidence to support a finding that Mehall or Bobby Jimerson
19 are unqualified to make the statements found within their affidavits as relating to their
20 position and experience with ATEE.  Accordingly, Plaintiffs' Motion to Strike Affidavits
21 of Patrick Mehall and Bobby L. Jimerson (Doc. 125) is DENIED.
22 . . .
23 . . .
24 . . .
25 . . .
26 . . .
27 . . .
28

## II.     SUMMARY JUDGMENT

### A.     *Factual Background*[1]

This matter arises from the sale of an allegedly defective engine sold to Plaintiffs on August 26, 2008.[2] Defs.' SOF at ¶ 1.  On August 20, 2008, Plaintiffs were operating their truck in Pima County, Arizona, when the engine broke down due to a valve failure. SOF (Doc. 96) at ¶ V.  Plaintiffs needed a replacement engine quickly in order to complete the load that they were hauling.  *Id.* at ¶ W.  Plaintiffs located Defendant Arizona Transmission & Engine Exchange ("ATEE") through the internet.  *Id.* at ¶ Y.  On August 21, 2008, Plaintiff Richbourg called Defendant Bobby Jimerson of Defendant ATEE and spoke to him regarding the purchase of a remanufactured Detroit Diesel Series 60 engine.  *Id.* at ¶ DD.  At the time of the purchase of the engine, Plaintiffs were contracted with Admiral Merchants as independent contractors to haul freight.  *Id.* at ¶ S. Admiral Merchants maintained checking accounts for Plaintiffs.  Pls.' SOF (Doc. 96) at ¶ T.

On August 26, 2008, Plaintiffs borrowed money from their in-laws and paid for the engine through their Admiral Merchants account by T-Check.  *Id.* at ¶ GG.  Plaintiffs registered the T-Checks and Defendants deposited them as payments for the engine.  *Id.* at ¶ HH.  Defendants assert that the remanufactured Detroit S60 DDEC III diesel engine, identified by ECM serial number 06R0245629, was sold to Admiral Merchants.  Defs.' Controverting SOF (Doc. 118) at ¶ 1; *See also* Defs.' SOF in Support of Mot. for Summ.

---

[1]For purposes of brevity and clarity, the Court has consolidated the factual recitations and objections of the parties from all of the summary judgment motions into one section.

[2]Plaintiff disputes this characterization, arguing that the verbal agreement was entered into on August 21, 2008, and the engine was paid for on August 26, 2008.  This is a distinction without a difference.  The actual sale, "the transfer of ownership of and title to property from one person to another for a price" occurred on August 26, 2008.  Merriam Webster Dictionary, http://www.merriam-webster.com/dictionary/sale (last visited May 6, 2013).

J. Re: Spoliation of Evid. (Doc. 120) at ¶ 1.  The engine was delivered to Tim's Wrecker and Road Service ("Tim's") in Benson, Arizona, for installation of the engine in the vehicle.  *See* Pls.' SOF (Doc. 96) at ¶¶ X, II; *See also* Defs.' Controverting SOF (Doc. 118) at ¶ 5; Defs.' SOF in Support of Mot. for Summ. J. Re: Spoliation of Evid. (Doc. 120) at ¶ 3.  On August 26, 2008, Tim's installed and tested the engine.  Pls.' SOF (Doc. 96) at ¶ JJ.  After the installation and testing of the engine, Plaintiffs left Benson to deliver the load.  *Id.* at ¶ KK.

Defendants allegedly made various representations to Plaintiffs regarding where the engine could be serviced, what repairs would be covered, the length of the warranty, and which party would cover labor costs during a breakdown.[3]  Defs.' SOF (Doc. 79) at ¶ 2.  On September 3, 2008, Plaintiff Richbourg called Defendants to inquire about the core charge.  *Id.* at LL.  Defendants faxed Plaintiffs four pages including the Invoice and Warranty.  *Id.* at ¶ MM.  Defendants describe these documents as a written document describing the terms and conditions of the warranty for the engine.[4]  Defs.' SOF (Doc. 79) at ¶ 3.  Defendants assert that this was faxed to Admiral Merchants not Plaintiffs.[5]  Defs.' Controverting SOF (Doc. 118) at ¶ 3.  Plaintiffs had not received a written copy of the warranty prior to the sale.[6]  *Id.* at ¶ 4.  When Plaintiffs received the written warranty in

---

[3] Plaintiffs again dispute Defendants' statement; however, they fail to give any specifics about what they dispute, point only generally to Plaintiff Richbourg's deposition testimony, which they fail to attach and reference their First Amended Complaint (Doc. 74), which is not inconsistent with either Defendants' statement nor Plaintiff Richbourg's deposition testimony.

[4] Plaintiffs dispute this stating that "defendants faxed 4 pages to plaintiffs, which included a document with purported warranty terms."  Pls.' SOF (Doc. 96) at ¶ 3.  Again, this is a distinction without a difference.

[5] The fax coversheet is addressed to Kirke/Admiral Merchants.  Defs.' Controverting SOF (Doc. 118), Exh. "B."

[6] Plaintiffs dispute this statement "in part" stating that "[t]he warranty is not part of the contract, but is evidence of fraud."  Pls.' SOF (Doc. 96) at ¶ 4.  This "dispute" is without

- 6 -

September 2008, they had concerns regarding the document being different from what had been orally represented to them by Defendants.[7] *Id.* at ¶ 5. Plaintiffs assert that the warranty contained "a whole lot of things that are not accurate." *Id.* at ¶ 6; Defs.' SOF (Doc. 79), Exh. 1, Richbourg Depo.10/26/2012 at 44:19-21.

Defendants assert that upon receipt of the warranty in September 2008, Plaintiffs knew that Defendants had made misrepresentations to them. Defs.' SOF (Doc. 79) at ¶ 7. Plaintiffs dispute this statement insofar as they claim that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time." Pls.' SOF (Doc. 96) at ¶ 7. Plaintiff Richbourg testified that it appeared that he and Plaintiff Ricks were mislead by Defendants at the time they received the warranty in September 2008.[8] Defs.' SOF (Doc. 79) at ¶ 8. Plaintiff Richbourg testified that Paragraph 3 of the Warranty, which describes the process of obtaining repairs, was different than what Defendants represented over the phone prior to the sale.[9] *Id.* at ¶ 9. Plaintiff Richbourg further testified that Defendants told him that he could go to an authorized Detroit Diesel dealer whereas the written warranty states that repairs will be performed at a facility

---

merit.

[7] Plaintiffs dispute this statement, reciting to various portions of Plaintiff Richbourg's deposition testimony. Plaintiffs do not attach a copy of the relevant deposition transcript excerpts; however, he improperly filed the entire transcript in the docket. *See* LRCiv. 56.1(f).

[8] Plaintiffs dispute this statement, arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 8. Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

[9] Plaintiffs dispute this statement, again arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 9. Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

1 authorized by Defendant Arizona Transmission.[10] *Id.* at ¶ 10.  Plaintiff testified that in
2 September 2008, he felt mislead regarding the authorized location of engine repair.[11] *Id.*
3 at ¶ 11.  Plaintiff Richbourg further testified that Paragraph 4 of the written warranty only
4 included normal maintenance such as injectors and gaskets, while the oral representations
5 made by Defendants prior to the sale included all repairs "up to and including replacing
6 the engine."[12]  Defs.' SOF at ¶ 12 (Doc. 79), Exh. "1" Richbourg Depo. 10/26/2012 at
7 52:11-13.  Plaintiff Richbourg testified that the difference in Paragraph 4 was the "major"
8 difference from what he had been told by Defendants.[13]  Defs.' SOF at ¶ 13; Exh. "1"
9 Richbourg Depo. 10/26/2012 at 52:5-13.  Plaintiff Richbourg that Paragraph 1 of the
10 warranty excludes labor costs while the oral representations made by Defendants prior to
11 the sale included labor costs.[14]  Defs.' SOF at ¶ 14.  Plaintiff Richbourg testified that the
12 representation in the warranty regarding labor costs was "very different" from what he

---

[10]Plaintiffs dispute this statement, again arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 10.  Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

[11]Plaintiffs dispute this statement, again arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 11.  Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

[12]Plaintiffs dispute this statement, again arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 12.  Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

[13]Plaintiffs dispute this statement, again arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 13.  Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

[14]Plaintiffs dispute this statement, again arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 14.  Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

1  had been told over the telephone.[15] Defs.' SOF at ¶ 15, Exh. "1" Richbourg Depo.
2  10/26/2012 at 53:15. Once Plaintiffs became aware of the misrepresentations in
3  September 2008, they did not contact Defendants to tell them that they had been misled.[16]
4  Defs.' SOF at ¶ 16. At that time, Plaintiffs realized that the warranty documents would
5  not "be much help" because the warranty was different than the oral representations.[17] *Id.*
6  at 17; Exh. "1" Richbourg Depo. 10/26/2012 at 56:7-13. Defendants state that Plaintiffs
7  filed a single count complaint alleging Fraud in the Inducement on February 27, 2012.
8  Defs.' SOF at ¶ 18. Plaintiffs correctly point out that they filed this cause of action on
9  February 24, 2012. *See* Complaint (Doc. 1).

10  On April 10, 2009, the # 5 cylinder failed while Plaintiffs were outside of Mobile,
11  Alabama. Pls.' SOF (Doc. 96) at ¶ SS. Plaintiffs had their truck and trailer towed to
12  Marine Systems, Inc. ("MSI"), an authorized Detroit Diesel repair facility. *Id.* at ¶ UU.
13  On the same day, Plaintiff Richbourg called Defendant Bobby Jimerson, who referred
14  him to Defendant Kim Jimerson. *Id.* at ¶ WW. On April 13, 2009, Plaintiff Richbourg
15  finally reached Defendant Kim Jimerson, who refused to honor the warranty. *Id.* at ¶ XX.
16  The same date, Defendant Kim Jimerson sent a fax addressed to "Kirke/Admiral
17  Merchant" stating that ATEE was "sending a cylinder kit and headgasket set in full

---

[15]Plaintiffs dispute this statement, again arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 15. Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

[16]Plaintiffs dispute this statement, again arguing that they did not "know of the defective engine and that a fraud existed as to the engine and warranty at this time[.]" Pls.' SOF (Doc. 96) at ¶ 16. Defendants statement; however, accurately reflects Plaintiff Richbourg's deposition testimony.

[17]Plaintiffs dispute this statement, quoting the entire exchange between defense counsel and Plaintiff Richbourg. Again, Plaintiffs failed to attach the deposition excerpt. The Court's review of the attached excerpt to Defendants' motion finds that although Plaintiffs' quotation is correct, Defendants' representation as to its meaning is also appropriate.

settlement of your warranty claim." Defs.' Controverting SOF (Doc. 118), Exh. "E." On April 14, 2009, Kris Beier of Admiral Merchants faxed a letter to Defendant Kim Jimerson requesting that Defendants honor their written warranty agreement. *Id.* at ¶ ZZ; Defs.' Controverting SOF (Doc. 118) at ¶ 6. On April 15, 2009, Defendant Kim Jimerson sent a fax addressed to both Plaintiff Richbourg and Kris Beier of Admiral Merchant refusing to authorize the repair facility in Mobile, Alabama. Defs.' Controverting SOF (Doc. 118), Exh. "F."

Defendants assert that despite having requested a return of the engine for inspection or repair, they have not seen the engine since the August 27, 2008 delivery to Tim's Wrecking and Road Service. Defs.' SOF in Support of Mot. for Summ. J. Re: Spoliation of Evid. (Doc. 120) at ¶¶ 4-5. Plaintiffs' expert Christopher Lane reportedly inspected the subject engine, but the ECM had already been removed or sold, and part of the engine block had suffered damage or corrosion due to the elements. *Id.* at ¶¶ 6-7. Defendants assert that inspection of the ECM is essential to determining liability issues in this case. *Id.* at ¶ 12. Plaintiffs assert that "[t]he location, and availability, of the engine has been disclosed to defendants from the beginning of this lawsuit[.]" Pls.' Resp. to Defs.' SOF in Supp. of Mot. for Summ. J. Re: Spoliation of Evid. (Doc. 123) at 8. In July 2009, the engine was purchased by Larry Wilson. *Id.* at 9 ¶ 2. In July 2010, Plaintiff Kirke Richbourg called Wilson and arranged to ship the engine and all of its components to Christopher Lane. *Id.* at 10 ¶ 6. Plaintiffs assert that the engine has been available for inspection since the inception of this lawsuit. *Id.* at 11 ¶ 11.

### B.  **Standard of Review**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is

- 10 -

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id*. In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Moreover, a "mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252. The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

### C.  Analysis

#### 1.  Statute of Limitations

"The purpose of a statute of limitation is 'to prevent assertion of stale claims against a defendant.'" *Azer v. Connell*, 306 f.3d 930, 936 (9th Cir. 2002) (citations omitted). "Statutes of limitation are primarily designed to assure fairness to defendants and to promote the theory that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1049 (9th Cir. 2008) (quotations omitted). It is well-established law that federal courts must apply the applicable statute of limitations period of the state in which the claim arose. *Musick v. Truett*, 623 F.2d 89, 90 (9th Cir. 1980). Arizona law provides that claims for fraud or mistake, *e.g.*, fraud in the inducement, "shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward[.]" A.R.S. § 12-543.

A cause of action is deemed to accrue when a claimant "knows, or in the exercise

of reasonable diligence should have known, of the defendant's negligent conduct." *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979) (reh'g den. Sept. 6, 1979) (citing Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590 (1948)); *See also Hydroculture, Inc. v. Coopers & Lybrand*, 174 Ariz. 277, 284 n. 7, 848 P.2d 856, 863 n. 7 (Ct. App. 1992) (citing *Sato*, 123 Ariz. at 227, 599 P.2d at 183); *See also* A.R.S. § 12-543(3) ("For relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."). This is commonly known as the discovery rule, and has long been applied by the Arizona courts. *See CDT, Inc. v. Addison, Roberts & Ludwig*, 198 Ariz. 173, 176, 7 P.3d 979, 982 (Ct. App. 2000). The rule only requires that a claimant have actual or constructive knowledge that he has been damaged, the total extent thereof is unnecessary for accrual to occur. *Id.*

Defendants assert that by September 3, 2008, Plaintiffs knew or should have known that the warranty on its face was materially different from what Plaintiffs had been told, and that their core charge was not returned. Defs.' Mot. for Summ. J. (Doc. 78) at 6. Defendants rely on *Coronado Development Corp. v. Superior Court of Arizona* in support of their motion. 139 Ariz. 350, 678 P.2d 535 (Ct. App. 1984). In *Coronado Development*, the plaintiffs alleged "that misrepresentations were made to them regarding their purchase and subsequent amendment of a contract involving the sale to them of a lot in a subdivision in Cochise County, Arizona." *Id.* at 351, 678 P.2d at 536. The developer informed plaintiffs that they needed to choose a different lot because a road had been constructed through their original choice. *Id.* Plaintiffs complied, and were subsequently informed by a lawyer in Chicago that "they had been 'had[.]'" *Id.* Despite their belief that they had been lied to by the developer, plaintiffs did not investigate further. *Id.* at 351-52, 678 P.2d at 536-37. Ultimately, plaintiffs did not file suit until 1983. *See id.* The court barred plaintiffs' suit as untimely, finding that the cause of action occurred in 1977 when the lawyer first informed them that they had been deceived. *Coronado*

*Development*, 139 Ariz. at 352, 678 P.2d at 537.

Conversely, Plaintiffs argue that where the facts have been concealed, the statute of limitations is tolled. Pls.' Resp. to Mot. for Summ. J. (Doc. 97) at 9. Plaintiffs argue that they did not know that there was a fraud until the engine failed on April 10, 2009. *Id.* at 5, 8. They further argue that it was not until April 13-15, 2009 that "Plaintiffs first discovered and knew they had been scammed and that the defendants had no intentions of: (1) performing at all under either the oral or written warranties or (2) authorizing MSI to perform the repairs." *Id.* at 5.

Plaintiffs rely heavily on *Mister Donut of America, Inc. v. Harris*, 150 Ariz. 321, 723 P.2d 670 (Ariz. 1986); however, the Court finds this reliance misplaced. The Arizona Supreme Court in *Mister Donut* held that the court of appeals improperly "substitut[ed] its factual determination for that of the jury's" when it overruled the jury's determination of when the statute of limitations accrued. *Id.* at 323, 723 P.2d at 673. Furthermore, Plaintiffs' counsel asserted at oral argument that the remanufactured engine is the crux of the problem, because Plaintiffs could not know that it was defective until the engine failed. Counsel went on to assert that the statute of limitations would then toll in perpetuity until the engine broke down.

The Court finds that this argument is inconsistent with the purpose of a statute of limitations. The warranty was for a limited time, yet despite this limitation Plaintiffs would assert a right to bring a claim well beyond the termination of the warranty period. Moreover, Plaintiffs' argument is contracted by Plaintiffs' deposition testimony. Plaintiff Richbourg testified that when he read the warranty on September 3, 2008 he thought, "I hope I don't have a problem because if I do, it looks like I am not going to get much help here." Richbourg Depo. 10/26/2013 (Doc. 86) at 56:11-13. Plaintiff Ricks testified that "regarding the verbal and written warranties[,] [h]ad we known or seen the warranty prior to those two checks being cashed by them versus what Bobby had shared with my husband, we never would have bought that motor. Never." Ricks Depo. 10/26/2012

- 13 -

(Doc. 87) at 24:17-21.  The Court finds that Plaintiffs knew both the "what" and could relate that to a particular "who" "in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault" by September 3, 2008. *Walk v. Ring*, 202 Ariz. 310, 316, 44 P.3d 990, 996 (2002).  This matter was filed on February 24, 2012, beyond the three year statute of limitations period.  Accordingly, Defendants' Motion for Summary Judgment (Doc. 78) is GRANTED.

### 2.     Other Motions for Summary Judgment

In light of the foregoing, the Court finds it unnecessary to reach the issues addressed in the other motions for summary judgment.  As such, they will be denied as moot.

Accordingly, IT IS HEREBY ORDERED that:

1)     Defendants' Motion for Summary Judgment (Doc. 78) is GRANTED;

2)     Plaintiffs' Cross-Motion for Summary Judgment on the Issue of the Statute of Limitations (Doc. 97) is DENIED;

3)     Plaintiffs' Motion for Summary Judgment on the Indispensable Party, Accord and Satisfaction, Warranty Contract, and Economic Loss Defenses (Doc. 98) is DENIED AS MOOT;

4)     Plaintiffs' Response to Defendants' Supplemental Statement of Facts in Support of Reply in Support of Defendants' Motion for Summary Judgment Re: Statute of Limitations and Motion to Strike Affidavit of Patrick Mehall and for Sanctions (Doc. 115) is DENIED AS MOOT;

5)     Defendants' Motion for Summary Judgment Re: Spoliation of Evidence (Doc. 119) is DENIED AS MOOT;

6)     Plaintiffs' Response to Defendants' Controverting Statyment [sic] of Response to Plaintiffs' Motion for Summary Judgment on the Indispensable Party, Accord and Satisfaction, Warranty Contract and Economic Loss Defenses and Motion to

Strike Affidavit of Patrick Mehall and Motion for Sanctions (Doc. 122) is DENIED AS MOOT;

7) Plaintiffs' Motion to Strike Affidavits of Patrick Mehall and Bobby L. Jimerson (Doc. 125) is DENIED;

8) Plaintiffs' Counsel's Application of John MacMullin to Withdraw as Counsel for Plaintiffs (Doc. 126) is DENIED AS MOOT; and

9) The Clerk of the Court shall enter judgment and close its file in this matter.

DATED this 28th day of June, 2013.

Bruce G. Macdonald
United States Magistrate Judge